1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JIMMY LEE BOZEMAN, II,

11              Petitioner,              2: 10 - cv - 1883 - MCE TJB

12         vs.

13   RICHARD B. IVES, Warden,
     FCI - Herlong
14

15         Respondent.           ORDER, FINDINGS AND

16                                RECOMMENDATIONS

17   _____/

18         Petitioner, Jimmy Lee Bozeman, II, is a federal prisoner proceeding *pro se* with a petition

19   for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

20                          I.  FACTUAL HISTORY

21         Petitioner is currently serving a forty-seven month sentence for bank robbery in violation

22   of 18 U.S.C. § 2113(a).  Petitioner's projected release date is April 16, 2012.  He is currently

23   incarcerated at FCI - Herlong.  In 2010, Petitioner requested a transfer to a residential re-entry

24   center (RRC) for the remainder of his sentence.  The unit manager responded on April 9, 2010

25   and stated the following:

26         You are requesting placement in a Residential Re-entry Center

1

(RRC) for the remainder of your sentence.

Your current release date is April 16, 2012.  You are currently participating in the Residential Drug Abuse Program.

Inmates may request transfer to a RRC, which needs to be requested during program review (team) meetings, or request pre-release RRC placement.

You do not qualify for a transfer to an RRC.

Pre-release RRC placement decisions are made on an individual basis using Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures, using the following criteria:  1) the resources of the facility contemplated, 2) the nature of the offense, 3) the history and character of the prisoner, 4) the statements by the court, 5) the pertinent policy statement.

Based upon the above referenced policy and information your request is denied at this time.

(Resp't's Answer Attachment 6.)

On April 13, 2010, Petitioner submitted a request for administrative remedy to the warden of FCI-Herlong which sought placement in a RRC for the duration of his prison sentence. (See id.)  On May 4, 2010, the warden denied the request and stated the following:

This is in response to your Request for Administrative Remedy dated April 13, 2010, wherein you are requesting placement in a Residential Reentry Center (RRC) for the remainder of your sentence.

An investigation into this matter reveals that you are currently participating in the Residential Drug Abuse Program and your current release date is April 16, 2012.  Pre-release RRC placement decisions, pursuant to the Second Chance Act of 2007, are made on an individual basis using Program Statement 7310.04, Community Corrections Center Utilization and Transfer Procedures, and using the following criteria:

1) The resources of the facility contemplated;
2) The nature of and circumstances of the offense;
3) The history and characteristics of the prisoner;
4) Any pertinent policy statement issued by the U.S. Sentencing Commission.

In review of these factors in your case, you will not be considered for RRC placement at this time.

2

1          In view of the above, there is no basis for relief, and your request
2          for remedy is denied.

3    (Id.)

4          On May 11, 2010, Petitioner filed an Administrative Remedy Appeal of the warden's

5    decision to the regional director.  (See id.)  On May 24, 2010, the regional director returned the

6    appeal to the institution for further review and response.  (See id.)  On June 16, 2010, the warden

7    issued an updated response to Petitioner's request which stated the following:

8          This is in response to your Request for Administrative Remedy
           dated April 13, 2010, wherein you are requesting placement in a
9          Residential Re-Entry Center (RRC) or home confinement for the
           remainder of your sentence.
10
           An investigation into this matter reveals your Unit Team
11         considered your request pursuant to the *Second Chance Act of
           2007*, on an individual basis for RRC placement.  The following
12         criteria was considered when making the RRC determination.

13         1) The resources of the facility contemplated;
           2) The nature and circumstances of the offense;
14         3) The history and characteristics of the prisoner;
           4) Any statement of the court that imposed the sentence;
15                a) concerning the purpose for which the sentence to
                  imprisonment was determined to be warranted; or
16                b) recommending a type of penal or correctional
                  facility as appropriate; and
17         5) Any pertinent policy statement issued by the U.S. Sentencing
           Commission.
18
           At the time of your request, it was determined that your current
19         designation commensurate your security and program needs and
           your designation is appropriate.  Based on this assessment a request
20         for an RRC is inappropriate.

21         In view of the above, there is no basis for relief, and your request
           for Administrate Remedy is denied.
22

23   (Id.)

24         Petitioner filed a BP-11 appeal to the BOP Office of General Counsel on or about June

25   22, 2010.  (See id. Attachment 7.)  An appeal to the General Counsel is the final administrative

26   appeal.  See 28 C.F.R. § 542.15.  If the Office of General Counsel does not reply within forty

                                          3

days, the inmate may consider the absence of a response to be a denial at that level.  See 28 C.F.R. § 542.18.

On July 16, 2010, Petitioner filed the instant federal habeas petition.  Petitioner appears to make two arguments in his federal habeas petition.  First, Petitioner argues that the BOP policy with respect to analyzing an inmate's request to transfer to an RRC before Petitioner's sentence has twelve months remaining is in conflict with the Second Chance Act.  (See Pet'r's Pet. at p. 8-10.)  Second, Petitioner argues that mitigating factors warrant his transfer to an RCC, home confinement or an alternative substitution.  (See id. at p. 6.)  Respondent answered the petition on September 9, 2010.

## II.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  See 28 U.S.C. § 2241.  Relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Petitioner's claims are proper under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255 because they concern the manner, location, or conditions of the execution of petitioner's sentence and not the fact of petitioner's conviction or sentence.[1]  See Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1991) (stating that a challenge to the execution of a sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241").  Venue is proper in this District as Petitioner is challenging the execution of his sentence at FCI - Herlong, which is within the Eastern District of California.

## III.  STATUTORY AND REGULATORY BACKGROUND

In Sacora v Thomas, 628 F.3d 1059 (9th Cir. 2010), petition for cert filed, (U.S. May 16, 2011) (No. 10-10580), the Ninth Circuit laid out the relevant statutory background applicable in

_____

[1] In his answer, Respondent admits that a court has jurisdiction to hear challenges to BOP policies regarding transfers to RRCs.  As stated in supra Part I, reading the pro se petition liberally, it includes a claim against the purported BOP policy applied in this case.

this case:

> Two statutory provisions govern the BOP's authority to place inmates in its custody in RRCs:  18 U.S.C. §§ 3621(b) and 3624(c).  Section 3621 governs the authority of the BOP to designate a prisoner's placement in general while he or she is in the BOP's custody.  In the context RRCs, this section governs the BOP's authority in cases where a prisoner who has more than a year left to serve of his or her prison sentence requests a transfer to such a facility.  [FN 2]
> [FN 2]  That governing statute provides:
> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering –
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence –
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>  . . . . The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal correctional facility to another . . . .
> 18 U.S.C. § 3621(b).

<u>Sacora</u>, 628 F.3d at 1061-62.

> On April 14, 2008, five days after the [Second Chance Act] went into effect, BOP officials issued  a memorandum (the "April 14 Memorandum") explaining the changes to the law and setting forth guidance to BOP staff about how to administer the law.  On October 21, 2008 . . . the BOP issued the regulations required by the statute . . . .
>
> Substantively, the regulations:  (1) define the terms "community confinement" and "home detention"; (2) provide that inmates may be designated to community confinement as a condition of pre-release custody for a period not to exceed 12 months and to home detention for a period not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months; and (3) provide that inmates will be considered for community confinement in an manner consistent with § 3621(b) on an individual basis, with placements of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

1   <u>Sacora</u>, 628 F.3d at 1063 (footnote omitted).

2            On November 14, 2008, BOP officials issued another
         memorandum (the "November 14 Memorandum") which provides
3        guidance to BOP staff when considering inmate requests for
         transfers to RRCs before the final 12 months of the inmate's
4        sentence.  It notes that "[i]nmates are legally eligible to be placed
         in an RRC at any time during their prison sentence[s]," and that
5        "[s]taff cannot, therefore, *automatically* deny an inmate's request
         for transfer to a RRC."  Instead, "inmate requests for RRC
6        placement must receive individualized consideration."  The
         memorandum further notes that "[t]elling an inmate that he/she is
7        *ineligible* for RRC placement is the same as *automatically* denying
         the inmate from even being considered for such placement, and is
8        not in accord with Bureau policy."  However, as in the April 14
         Memorandum, the November 14 Memorandum advises BOP staff
9        that "a RRC placement beyond six months should only occur when
         there are unusual or extraordinary circumstances justifying such
10       placement, and the Regional Director concurs."

11   <u>Id.</u> at 1064.

12                              IV.  EXHAUSTION

13            Respondent argues that Petitioner has failed to exhaust his administrative remedies.

14   Petitioner concedes this point in his petition, but requests that exhaustion be excused.  The

15   exhaustion prerequisite for filing a § 2241 petition is judicially created and is not a statutory

16   requirement.  <u>See</u> <u>Brown v. Rison</u>, 895 F.2d 533, 535 (9th Cir. 1990), <u>overruled on other grounds</u>

17   <u>by</u>, <u>Reno v. Koray</u>, 515 U.S. 50 (1995).  Thus, "[b]ecause exhaustion is not required by statute, it

18   is not jurisdictional."  <u>Brown</u>, 895 F.2d at 535.  If a petitioner has not properly exhausted his

19   claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the

20   merits or require the petitioner to exhaust his administrative remedies before proceeding in

21   court."  <u>Id.</u>  Exhaustion may be excused if pursuing the administrative remedy would be futile.

22   <u>See</u> <u>Fraley v. United States Bureau of Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993) (per curiam).

23   Factors weighing in favor of requiring exhaustion include whether:  (1) agency expertise makes

24   agency consideration necessary to generate a proper record and reach a proper decision; (2)

25   relaxation of the requirement would encourage the deliberate bypass of the administrative

26   scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes

1  and to preclude the need for judicial review.  See Noriega-Lopez v. Ashcroft, 335 F.3d 874, 880-

2  81 (9th Cir. 2003).

3        As noted in supra Part I, Petitioner filed a BP-11 appeal to the Office of General Counsel

4  before filing this federal habeas petition which is the last step to exhaust his administrative

5  remedies.  Neither Petitioner nor Respondent has indicated whether the Office of General

6  Counsel issued an opinion with respect to that appeal or whether it simply did not respond to the

7  appeal within forty days which is considered a denial.  See 28 C.F.R. § 542.18.  A review of the

8  Federal Bureau of Prisons inmate lookup feature reveals that Petitioner is still imprisoned at FCI

9  -Herlong.  Thus, it appears as if Petitioner's claims could possibly now be  exhausted.

10  Furthermore, while the undersigned is aware of the reasons to defer judgment even if this matter

11  is not yet exhausted, the recent opinion from the Ninth Circuit in Sacora, 628 F.3d 1059 weighs

12  in favor of deciding this case now rather than delay its resolution.  See Cook v. Ives, Civ. No. 08-

13  2305, 2011 WL 149854, at *2 (E.D. Cal. Jan. 18, 2011).

14                          V.  ANALYSIS OF PETITIONER'S CLAIMS

15        First, Petitioner appears to challenge the BOP's policy regarding transfers of prisoners to

16  RRCs prior to the final twelve months of a prisoner's sentence.  Petitioner states that "in this case

17  the court is faced with a statute providing that the BOP must consider several factors in CCC

18  placement, and a regulation providing that the agency may not consider those factors in full by

19  referring to the Second Chance Act brings conflict between the two statutes."  (Pet'r's Pet. at p.

20  9-10.)  Petitioner cites to Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008) in support of his

21  petition.  For the following reasons, this argument is without merit.

22        In Sacora, the Ninth Circuit specifically analyzed the current BOP policy (and the one

23  applicable in this case) with respect to inmates requesting a transfer to a RRC prior to their final

24  twelve months of imprisonment.  The Court specifically found that the BOP's policy did not

25  violate the Second Chance Act by explaining that:

26           The . . . policy set forth in the November 14 Memorandum is

                                         7

consistent with § 3621(b) . . . Petitioners argue, however, that the policy as set forth in the November 14, Memorandum is contrary to our decision in Rodriguez v. Smith, 541 F.3d 1180 (9th Cir. 2008). We disagree.

In Rodriguez, we held that the prior version of the regulations codified at 28 C.F.R. §§ 520.20 and 520.21 was invalid, because it "categorically exclude[d] inmates from RRC eligibility without considering the mandatory factors articulated in § 3621(b)." 541 F.3d at 1187. No such problem exists here. Although the November 14 Memorandum does set forth a presumption that RRC placements of longer than six months should occur only "when there are unusual or extraordinary circumstances justifying such placement[ ] and the Regional Director concurs," the Memorandum also admonishes BOP staff that they "cannot . . . automatically deny an inmate's request for transfer to a RRC" because "[i]nmates are legally eligible to be placed in an RRC at any time during their prison sentence[s]." The memorandum also reminds the BOP staff that they "must individually consider the request, just as they would any other request for lower security transfer." Further, the memorandum reminds the staff that when they review an inmate's transfer request, they should review the five factors set forth in 18 U.S.C. § 3621(b) that, we noted in Rodriguez, are "mandatory." Rodriguez, 541 F.3d at 1187. Accordingly, we conclude that the BOP's policy as set forth in the November 14 Memorandum does not violate the SCA.

Sacora, 628 F.3d at 1068. For the reasons outlined above in Sacora, Petitioner's challenge to the BOP's current policy is without merit.

Petitioner also appears to argue that the BOP improperly analyzed the relevant § 3621(b) factors in his individual case and circumstances. In support of this argument, Petitioner presents "mitigating information" to support this argument, specifically, the deteriorating health of his mother. While Petitioner obviously disagrees with the determination related to BOP's 2010 evaluation, the BOP has sole discretion to place an inmate into "any available penal or correctional facility" and to "direct transfer of an inmate from one penal or correctional facility to another . . . at any time." 18 U.S.C. § 3621(b). The only limit to that discretion is that the BOP must undertake an individualized consideration of an inmate for placement based on the five-factor criteria set forth in 18 U.S.C. § 3621(b). That individualized consideration was conducted in this case as exemplified by the warden's June 16, 2010 response which specifically noted that

his decision considered the relevant § 3621(b) factors.  Petitioner is not entitled to any relief greater than that in this federal habeas action.  See Binford v. Ives, Civ. No. 10-945, 2011 WL 1791198, at *4 (D. Or. May 10, 2011) (denying habeas petition where "it was evident that the BOP provided the individualized consideration required under § 3621(b).  The statute does not require more."); Burnham v. Ives, Civ. No. 08-2522, 2010 WL 2612609, at *8 (E.D. Cal. June 29, 2010) (holding that Petitioner's claim is moot where he received the only relief that could be properly ordered by the court, an individualized consideration of his transfer request in accordance with § 3621(b) & § 3624(c)) (citations omitted).  Therefore, this argument does not warrant federal habeas relief as well.

## VI.  PETITIONER'S MOTION FOR SUMMARY JUDGMENT

On June 7, 2011, Respondent was ordered to show cause regarding whether he had served Petitioner with Attachments 6 and 7 as the record regarding the service of these documents was unclear.  On June 8, 2011, Respondent filed a certificate of service of Attachments 6 and 7.  In a document filed June 9, 2011, but dated June 6, 2011, Petitioner filed a motion for summary judgment due to Respondent's failure to serve him with Attachments 6 and 7.  However, based on subsequent events, Petitioner has now been served with Attachments 6 and 7.  Furthermore, for the reasons described in this opinion, he is not entitled to federal habeas relief on his petition such that this motion for summary judgment will be denied.

## VII.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion for summary judgment is DENIED.

For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

shall be served and filed within seven days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 14, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

10